Case 1:06-cr-00313-JOF-GGB   Document 24   Filed 07/11/06   Page 1 of 9

ORIGINAL

FILED IN OPEN COURT
U.S.D.C. Atlanta

JUL 1 1 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | |
| | : | NO. |
| IBRAHIM DIMSON a/k/a "Dirk," | : | |
| EDMUND DUHANEY, and | : | **1:06-CR-313** |
| JOYA WILLIAMS | : | |

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment:

### BACKGROUND

1. The Coca Cola Company ("the Company") is a publicly-traded corporation whose business focuses on the manufacture, the marketing, and the distribution of beverages, concentrates and syrups. The Company's corporate headquarters is located in Atlanta, Georgia, within the Northern District of Georgia. The Company distributes its products in interstate and international commerce to all areas of the United States, and all over the world.

2. As a part of its normal business operation, the Company creates and maintains economic data, business plans and other information that is related to the distribution and sale of its products. Moreover, the Company also researches and develops new scientific formulas and products that are related to, or to be included in, its already-existing product lines. In addition, said new formulas and products are related to, or to be included in, new

product lines that are planned to be marketed in interstate and international commerce after its development.

3. Said confidential information and products in development derives independent economic value, both actual and potential, from not being generally known to the public.

4. The Company maintains the above-described information confidential, and takes reasonable measures to protect and keep secret its proprietary information (trade secrets) until it decides to publicize such information. Some of the protective measures include, among others, physical security of the premises, limiting access to the trade secrets only to those who need it to perform their employment duties, implementing data security policies, execution of non-disclosure agreements by employees, and classifying and labeling confidential documents according to the Company's Information Protection Policies.

5. In addition to the above-described security measures, the Company requires all employees to adhere to its Code of Business Conduct as a condition of employment. The Code of Business Conduct includes an obligation to safeguard the Company's non-public information.

6. During the relevant time period, defendant JOYA WILLIAMS, was employed at the Company's headquarters as an Executive Administrative Assistant to a high ranking officer at the Company. As an Executive Administrative Assistant, WILLIAMS had access to

the Company's confidential information and other trade secrets, such as samples of products that were in development and not yet disclosed to the public.

7.  During the course of her employment with the Company, WILLIAMS was given the Company's Code of Business Conduct, and had executed a confidentiality agreement as a condition of her employment.

COUNT ONE
(Conspiracy)
**18 U.S.C. § 1832(a)(5)**

8.  The Grand Jury re-alleges the allegations set forth in paragraphs one through seven of this Indictment and incorporates by reference said paragraphs as if the same were fully set forth herein.

9.  Beginning on a date unknown to the Grand Jury but at least by on or about May 8, 2006, and continuing until on or about July 5, 2006, in the Northern District of Georgia, and elsewhere, the defendants,

IBRAHIM DIMSON a/k/a "Dirk,"
EDMUND DUHANEY, and
JOYA WILLIAMS

did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and others known and unknown to the Grand Jury to commit the following offenses:

(A) Theft of trade secrets, in violation of Title 18, United States Code, Section 1832(a)(1);

(B) unlawfully replicating and transmitting trade secrets, in violation of Title 18, United States Code, Section 1832(a)(2); and

(C) receiving and possessing trades secrets, while knowing the same to have been stolen and taken without authorization, in violation of Title 18, United States Code, Section 1832(a)(3).

## MANNER AND MEANS

10. The defendants would and did carry out the conspiracy and effect its unlawful objects and executed the scheme to defraud through the following manner and means, among others:

    A.   It was a part of the conspiracy that JOYA WILLIAMS would copy and/or remove the Company's trade secret documents and remove samples of products that were in development and would give these items to EDMUND DUHANEY and IBRAHIM DIMSON a/k/a "Dirk."

    B.   It was a part of the conspiracy that DIMSON would then solicit and sell the Company's trade secrets to a third-party in exchange for a sum of money.

    C.   It was a part of the conspiracy that the defendants would then split the proceeds from the sale of the Company's trade secrets.

## OVERT ACTS

11. In furtherance of the conspiracy and to achieve the objects and purposes thereof, the defendants committed and caused to be committed the following overt acts, among others, in the Northern District of Georgia and elsewhere:

A. On or about May 8, 2006, the defendant, IBRAHIM DIMSON, a/k/a "Dirk," sent letter addressed to PepsiCo, the Company's main competitor, offering to sell the Company's trade secrets to "the highest bidder." "Dirk" also provided the telephone number (718) 772-6665 as the number at which he could be contacted.

B. Beginning on or about May 25, 2006, and continuing until on or about July 5, 2006, "Dirk" had numerous contacts with "Jerry," an undercover federal agent, who was represented to be an intermediary for Pepsico.

C. On or about June 12, 2006, the defendant, JOYA WILLIAMS removed the Company's documents from her work station, and placed the documents, along with what appeared to be a product sample, into her personal bag.

D. On or about June 15, 2006, DIMSON traveled from the New York area to the Atlanta, Georgia area for the purpose of exchanging the Company's trade secrets for cash.

E. On or about June 19, 2006, WILLIAMS printed out three copies of an email dated June 19, 2006 that was sent to the high ranking officer for whom she worked. The subject line of the email referenced a "Project N*******."

F. On or about June 21, 2006, "Dirk" faxed to the undercover agent an email dated June 19, 2006 that was sent to the high ranking officer for whom WILLIAMS worked. The subject line of

the email referenced a "Project N*******."

  G. On or about June 27, 2006, "Dirk" agreed to sell to "Jerry" additional trade secrets of the Company for a price of $1.5 million.

  H. On or about June 27, 2006, within the Northern District of Georgia, DUHANEY opened a bank account at Bank of America (Account No. ********6558) under the business name of Noble House Group LLC, with an address of 4415 Wellington Terrace, Decatur, Georgia, and listed on the account the names of EDMUND DUHANEY as President, and IBRAHIM DIMSON as Vice President of Noble.

  I. On or about June 27, 2006, "Dirk" gave "Jerry" the Bank of America Account No. ********6558 in the name of Noble House Group, LLC., as the account to which the $1.5 million should be deposited.

  J. On or about June 27, 2006, WILLIAMS removed from the Company's headquarters items in a brown cardboard box bearing a "Staples" logo on it.

  K. Sometime after June 27, 2006 but before on or about July 5, 2006, DUHANEY received and possessed a brown cardboard box bearing a "Staples" logo that contained two product samples and other confidential documents belonging to the Company.

  L. On or about July 1, 2006, DUHANEY wrote a check from Account No. ********6558 to himself in the amount of $10,000.00 and

cashed the check.

All in violation of Title 18, United States Code, Section 1832(a)(5).

## FORFEITURE PROVISION

12. Upon conviction of one or more of the offenses alleged in Count One of this Indictment, the defendants,

> IBRAHIM DIMSON a/k/a "Dirk,"
> EDMUND DUHANEY, and
> JOYA WILLIAMS

shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 18 U.S.C. § 1834(a)(1) and 28 U.S.C. § 2461, any property, real or personal, constituting or derived from, the proceeds they obtained directly or indirectly as a result of the offenses in Count One of the Indictment, and any property traceable to such property including, but not limited to the following:

A. A sum of money equal to $5,000 wired to IBRAHIM DIMSON a/k/a "Dirk" on or about June 9, 2006;

B. A sum of money equal to $30,000 given to IBRAHIM DIMSON a/k/a "Dirk" on June 16, 2006 in exchange for contents of an Armani Exchange bag;

C. A sum of money equal to $10,000 wired to Bank of America Account No. ********6558 on or about June 29, 2006; or

D. A money judgment for a sum of money equal to all of the proceeds obtained as a result of the offense listed in this

Indictment.

13. If, as a result of any act or omission of the defendants, any property subject to forfeiture:

    A. Cannot be located upon the exercise of due diligence;

    B. has been transferred or sold to, or deposited with, a third person;

    C. has been placed beyond the jurisdiction of the Court;

    D. has been substantially diminished in value; or

    E. has been co-mingled with other property which cannot be subdivided without difficulty; the United States intends, pursuant Title 21 United States Code, Section 853(p), as incorporated by Title 18 United States Code, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

All in violation of 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(b)(2), 1834(a)(1) and 28 U.S.C. § 2461.

A _____True_____ BILL

_____
FOREPERSON

DAVID E. NAHMIAS
UNITED STATES ATTORNEY

BYUNG J. PAK
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 559457

RANDY CHARTASH
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 121760
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
(404) 581-6000 (ph)
(404) 581-6181 (fax)